**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **JEANETTE R. RIVERA-BREZNAI,**<br>5684 Clouds Mill Drive<br>Alexandria, VA 22310<br><br>*Plaintiff,*<br><br>v.<br><br>**HON. MARKWAYNE MULLIN**<br>Secretary of Homeland Security<br>Department of Homeland Security<br>in his official capacity,<br>2707 Martin Luther King Jr. Ave. SE<br>Washington, DC 20528<br><br>*Defendant.* | ) | **Civil Action No.** ________________<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff Jeanette R. Rivera-Breznai, by and through undersigned counsel, alleges as follows:

**PARTIES**

1.

Plaintiff Jeanette R. Rivera-Breznai is an individual who resides in Alexandria, Virginia.

2.

Defendant Hon. Markwayne Mullin is the Secretary of Homeland Security and is sued solely in his official capacity as the head of the United States Department of Homeland Security.

**JURISDICTION, VENUE, AND EXHAUSTION**

3.

This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law.

4.

Plaintiff brings claims of sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, and age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 633a.

5.

Plaintiff timely pursued administrative remedies and filed a formal administrative complaint on November 18, 2025, alleging sex discrimination, age discrimination, and retaliation arising from the actions described below. More than 180 days have elapsed without final agency action. Plaintiff therefore may file this civil action under 42 U.S.C. § 2000e-16(c), 29 U.S.C. § 633a(c), and 29 C.F.R. § 1614.407(b).

6.

Venue over Plaintiff's Title VII claims is proper in this District under 42 U.S.C. § 2000e-5(f)(3) because a substantial part of the alleged unlawful employment practices occurred at United States Coast Guard Headquarters in Washington, D.C., and Plaintiff would have continued working there but for the challenged actions.

7.

Venue over Plaintiff's ADEA claim is proper in this District under 28 U.S.C. § 1391(e)(1)(B) because a substantial part of the events and omissions giving rise to that claim occurred in Washington, D.C.

## FACTUAL ALLEGATIONS

### Background

8.

Plaintiff is a 51-year-old woman with more than 23 years of federal service.

9.

Plaintiff held a Senior Level (SL) position in the Series 0132 intelligence field at United States Coast Guard Headquarters in the office designated CG-2.

10.

Plaintiff was selected for that position because of her extensive technical expertise, institutional knowledge, and experience in the intelligence field.

### Protected EEO Activity

11.

From March 2022 through January 2023, Plaintiff personally witnessed conduct within CG-2 that she reasonably believed violated federal equal-employment-opportunity requirements.

12.
In late 2022, CG-2 personnel initiated a complaint alleging a hostile work environment against Jeff Radgowski and Rear Admiral Rebecca Ore, and Plaintiff was identified as a witness.

13.
On February 15, 2023, Plaintiff participated in the complaint process by providing Captain Vincent Skwarek and Dr. Donna Navarro a detailed witness statement concerning the conduct she had observed.

14.
Plaintiff provided her statement through a confidential process and expressly requested that it not be disseminated beyond those with an official need to know.

**Retaliatory Treatment Following Plaintiff's Return**

15.
Plaintiff returned from a detail assignment to her position in CG-2 on January 13, 2025.

16.
Upon her return, Plaintiff's former duties, responsibilities, and organizational role were not restored. Rear Admiral Ore stated that she wanted Ms. Pam Duke, who had been performing Plaintiff's role, to remain in that role.

17.
The new Chief of Staff, Captain Bradley Conway, repeatedly told Plaintiff that he had access to and reviewed her confidential witness statement.

18.
Captain Conway further stated that Plaintiff's statement had been shared with others in CG-2 'to watch me and not let me file like I did in the past.'

19.
Rear Admiral Ore provided Captain Conway and other CG-2 officials access to Plaintiff's statement, placing Plaintiff's prior protected activity before officials who controlled or influenced her duties and professional opportunities.

20.
After Plaintiff's return, those officials excluded her from the duties and decision-making responsibilities associated with her position and continued to permit Ms. Duke to perform Plaintiff's former role.

21.

Plaintiff observed Rear Admiral Ore, Ms. Duke, and Captain Conway meet to coordinate their accounts concerning complaints within CG-2. When Plaintiff objected that such conduct was improper, she was told that she 'need[ed] to mind [her] own business if [she] knew what was good for [her].'

**Management-Directed Reassignment**

22.

On June 27, 2025, Vice Commandant Vice Admiral Peter Gaultier informed Plaintiff that she would be involuntarily reassigned through a Management-Directed Reassignment and that written notice would follow.

23.

Plaintiff received written notice on July 14, 2025, stating that her reassignment would become effective on July 27, 2025.

24.

Plaintiff requested an explanation for the reassignment and asked what would occur if she did not accept it. Her requests were not answered, and she was told that she would be removed from federal service if she refused the reassignment.

25.

The reassignment moved Plaintiff from the Series 0132 intelligence position for which she had been recruited into a Series 0340 position materially misaligned with her specialized intelligence background, experience, and established professional role.

26.

No reduction in force or reorganization eliminated Plaintiff's CG-2 position. As of November 18, 2025, CG-2 and Plaintiff's former position remained intact.

27.

A younger and less-qualified male assumed Plaintiff's former role. Upon information and belief, he was a professional associate of Mr. Gary Rasicot.

28.

Plaintiff repeatedly requested the reasons for her selection and information explaining how Coast Guard senior civilian employees had been selected for reassignment, but those requests were denied.

29.
Plaintiff notified Rear Admiral Zeita Merchant and Rear Admiral Michael Day, then Acting Deputy Commandant for Personnel, that her acceptance was involuntary and again requested the basis for her reassignment.

30.
Before the MDR actions, the relevant group of Coast Guard senior civilian employees considered for reassignment included 10 women and 14 men. Four of the five employees selected for MDR were women.

31.
The only man selected for MDR had already announced his intention to retire. Plaintiff was informed that he was added after the initial selection of four women raised concerns about the gender imbalance.

32.
The disproportionate selection of women, the retention of Plaintiff's former position, the placement of a younger male in her former role, and the prior retaliatory treatment together support an inference that sex, age, and Plaintiff's protected EEO activity affected the reassignment decision.

**Harm to Plaintiff**

33.
The reassignment deprived Plaintiff of the specialized duties, leadership responsibilities, professional standing, and career opportunities associated with her CG-2 intelligence position.

34.
Ms. Duke thereafter told others that Plaintiff had been 'removed,' further damaging Plaintiff's professional reputation and reinforcing the perception that the reassignment was punitive.

35.
Defendant's conduct caused Plaintiff emotional distress, anxiety, loss of sleep, professional and reputational harm, and an exacerbation of her service-connected post-traumatic stress disorder for which she sought therapy and medication.

**COUNT I — SEX DISCRIMINATION UNDER TITLE VII**

36.
Plaintiff incorporates paragraphs 1 through 35 as though fully stated here.

37.

Title VII requires that federal personnel actions be made free from discrimination based on sex. 42 U.S.C. § 2000e-16(a).

38.

Defendant treated Plaintiff adversely because of her sex by selecting her for involuntary reassignment, removing her from her established leadership role, and permitting a male employee to assume that role while the position remained intact.

39.

The selection of four women among the five employees subjected to MDR, the circumstances surrounding the addition of the only male selected, and the replacement of Plaintiff by a younger male provide additional circumstantial evidence of sex discrimination.

40.

The reassignment caused Plaintiff concrete harm to the terms, conditions, and privileges of her employment, including the loss of specialized duties, leadership responsibilities, professional stature, and career opportunities.

41.

As a direct result of Defendant's intentional sex discrimination, Plaintiff suffered the injuries and losses described above.

**COUNT II — AGE DISCRIMINATION UNDER THE ADEA**

42.

Plaintiff incorporates paragraphs 1 through 35 as though fully stated here.

43.

Plaintiff was 51 years old at the time of the challenged actions and was protected by the ADEA.

44.

The ADEA requires that federal personnel actions affecting employees age 40 and older be made free from discrimination based on age. 29 U.S.C. § 633a(a).

45.

Defendant removed Plaintiff from her established CG-2 role and placed a younger, less-qualified male in that role even though the position remained intact and no reduction in force or reorganization eliminated it.

46.

These circumstances support an inference that Plaintiff's age affected the process by which Defendant selected her for reassignment and selected her replacement.

47.

As a direct result of Defendant's age discrimination, Plaintiff suffered the injuries and losses described above.

**COUNT III — RETALIATION UNDER TITLE VII**

48.

Plaintiff incorporates paragraphs 1 through 35 as though fully stated here.

49.

Plaintiff engaged in protected activity by participating as a witness in the complaint process, providing a detailed statement concerning conduct she reasonably believed violated federal EEO requirements, and opposing conduct she reasonably believed to be unlawful.

50.

Officials responsible for or capable of influencing Plaintiff's duties and professional opportunities knew of her protected activity because they possessed, circulated, and repeatedly discussed her witness statement.

51.

After Plaintiff returned to CG-2, Defendant did not restore her duties, excluded her from her established role, subjected her to monitoring intended to deter future complaints, and ultimately removed her from CG-2 through the MDR.

52.

Captain Conway's statement that officials had been given Plaintiff's prior statement 'to watch me and not let me file like I did in the past' is direct evidence of retaliatory animus and an intent to deter protected activity.

53.

The continuing retaliatory treatment following Plaintiff's return, the involvement of officials who knew of her protected activity, and the circumstances of the MDR support a causal connection between Plaintiff's protected activity and the materially adverse actions taken against her.

54.

As a direct result of Defendant's retaliation, Plaintiff suffered the injuries and losses described above.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and grant the following relief:

A.

Declare that Defendant violated Title VII and the ADEA;

B.

Order Defendant to reinstate Plaintiff to her former Senior Level (SL) intelligence position within CG-2 or to a substantially equivalent position;

C.

If reinstatement is infeasible, award appropriate front pay and other equitable make-whole relief;

D.

Award back pay, lost benefits, appropriate service credit, retirement contributions, and prejudgment and post-judgment interest to the extent authorized by law;

E.

Award compensatory damages available under Title VII for Plaintiff's pecuniary and non-pecuniary losses, including emotional distress and exacerbation of post-traumatic stress disorder;

F.

Order Defendant to correct Plaintiff's personnel records and expunge references to the unlawful MDR and related adverse materials;

G.

Enjoin Defendant from further discrimination or retaliation against Plaintiff;

H.

Award reasonable attorneys' fees, expert-witness fees, and costs; and

I.
Grant such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on her Title VII claims and on all other issues so triable.

Dated September 25, 2026

Respectfully submitted,

**/s/ John M. Shoreman**
John M. Shoreman
McFADDEN & SHOREMAN
1701 Pennsylvania Ave., NW
Suite 200
Washington, DC 20006
(571) 296-8450
jms@mcfaddenshoreman.com
Counsel for Plaintiff